IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL,

    Plaintiffs,

  v.

DEE M. McLEMORE TRUST, CHERYL PLATO
McLEMORE, in her individual and representative
capacities, JOHN McKENNA, in his representative
capacity, JAMES TODD RUSSELL, in his
representative capacity, HARD CHROME
ENGINEERING, INC.,

    Defendants.

No. C 19-01116-WHA

**ORDER GRANTING
MOTION TO DISMISS**

**INTRODUCTION**

In this civil action to recover response costs and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), one defendant moves to dismiss the amended complaint as it pertains to her individual liability pursuant to FRCP 12(b)(6). To the extent stated below, the motion to dismiss is **GRANTED**.

**STATEMENT**

The present action centers around the contamination of real property in Oakland. From 1972 to 1988, Hard Chrome Engineering, Inc. leased property from Dee M. McLemore. From 1988 to 2005, HCE leased the same property from the Dee M. McLemore Trust. HCE operated a metal- and chromium-plating business on the leased property. It generated

approximately fifty pounds of hazardous substances per month, some of which went directly onto the ground. The leased property is referred to as the Hard Chrome Engineering real property (Amd. Compl. ¶¶ 2, 8, 12, 13, 15, 16).

In 1992, Dee M. McLemore died. His surviving spouse, defendant Cheryl McLemore, became a co-trustee of the Trust, as well as a designated beneficiary. She has received money or other benefits from the Trust (Dkt. No. 38 at 3).

In 2005, under the authority of California Health and Safety Code § 25358.3, the California Department of Toxic Substances Control, plaintiff in the present action, executed an Imminent and Substantial Endangerment Determination and Consent Order that required the Trust to investigate and remediate the release of hazardous substances at and from the Hard Chrome Engineering real property. In 2008, however, McLemore informed the Department that the Trust could no longer comply with the I&SE Order, allegedly due to insufficient assets in the Trust. The Department then took over the investigation and remediation. It approved a removal action workplan in 2012 and began physical on-site construction of a remedy in 2013. The Department has incurred approximately $2,459,409 in response costs, excluding interest (Amd. Compl. ¶¶ 18, 20–23, 28).

In February 2019, the Department brought suit against multiple defendants pursuant to CERCLA, 42 U.S.C. § 9601 *et seq.*, to recover the response costs including interest and to seek declaratory relief (Dkt. No. 1). In July, the Department filed the first amended complaint which alleges defendant McLemore is liable in both her representative capacity and in her individual capacity under CERCLA, both as a trustee and as a beneficiary (Amd. Compl. ¶¶ 9, 34, 35). McLemore now seeks to dismiss the first amended complaint to the extent that she is sued in her individual capacity (Dkt. No. 38). In her motion to dismiss, McLemore appended and requests judicial notice of the Amended Trust Agreement, dated June 1989, which amended an earlier trust agreement, dated October 1988, that created the Trust (Dkt. Nos. 39–40). Plaintiff objects to the request for judicial notice (Dkt. No. 43-1). This order follows full briefing and a hearing.

**ANALYSIS**

**1. FRCP 12(b)(6).**

Congress enacted CERCLA in 1980 "in response to the serious environmental and health risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA has two primary goals: (1) to ensure the prompt and effective cleanup of waste disposal sites; and (2) to ensure the parties responsible for the release bear the cleanup costs — not the public. *City of L.A. v. San Pedro Boat Works*, 635 F.3d 440, 447 (9th Cir. 2011). To effectuate these purposes, CERCLA § 107(a) imposes liability on responsible parties for costs the federal government or a state incurs when responding to the release of hazardous substances. Under CERCLA, responsible parties include current owners or operators, owners or operators at the time of the disposal of the hazardous substances, arrangers, and transporters. *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 881 (9th Cir. 2001).

In the instant motion, McLemore does not dispute her *representative* liability as a trustee. She contends, however, that the complaint fails to state a claim against her in her *individual* capacity as either a trustee or as a beneficiary under CERCLA § 107. As shown below, this order finds the complaint fails to allege McLemore's individual liability as a trustee or as a beneficiary.

**A. Individual Liability as a Trustee.**

Under CERCLA, trustees are liable for clean-up costs for contamination caused by their acts as trustees. A 1996 amendment, however, limits the extent of such liability to the assets of the trust. A proviso to that amendment clarifies that its limitation would not protect (i) those who act in a capacity other than a fiduciary or in a beneficiary capacity and, in that capacity, benefit, or (ii) those who are a beneficiary and fiduciary with respect to the same estate and, as a fiduciary, receive benefits that exceed customary or reasonable compensation:

> Nothing in this subsection applies to a person if the person (A) (i) *acts* in a capacity other than that of a fiduciary or in a beneficiary capacity; and (ii) in that capacity, directly or indirectly benefits from a trust or fiduciary relationship; or (B) (i) *is* a beneficiary and a fiduciary with respect to the same fiduciary estate; and (ii) as a fiduciary, receives benefits that exceed customary or reasonable compensation, and incidental benefits, permitted under other applicable law.

3

CERCLA § 107(n)(7). This order holds that, pursuant to Section 107(n)(7)(A), acts taken in the capacity of a beneficiary of a trust (and which in fact benefit the beneficiary) face full liability. A trustee is fully liable when his or her acts are also acts by a beneficiary qua beneficiary (and the trustee/beneficiary in fact benefits therefrom). On the other hand, acts by a trustee only as a trustee face only limited liability, meaning liability is limited to the assets in the trust.

For purposes of Section 107(n)(7)(A), however, it is not enough to *be* a beneficiary; instead, that provision requires the beneficiary perform some *act* in its capacity as a beneficiary. Reading Section 107(n)(7) in its entirety makes this clear, as it expressly differentiates between "being" and "acting." Subsection (B) states, "[n]othing in this subsection applies to a person if the person *is* a beneficiary," whereas Subsection (A) states, "[n]othing in this subsection applies to a person if the person *acts* . . . in a beneficiary capacity." This distinction must be given meaning.

Thus, to face full liability, a fiduciary must perform an act that is also in a beneficiary capacity under Section 107(n)(7)(A), not merely be a beneficiary. The most obvious example, for purposes of our case, is a trustee who is also a beneficiary, a common occurrence in family trusts. Although most acts are done by the trustee, there are times when beneficiaries ratify or act among themselves to direct a trust (or an estate). For example, beneficiaries may direct trustees to sell trust-held property in compliance with the terms of a deed of trust, direct trustees to transfer trust-held property to their designated nominee, ratify trustees' ultra vires acts or agreements by directing the trustees to take the challenged acts or enter into the agreements, or direct trustees on how to vote at a stockholders' meeting. In such circumstances, those acts, if they contaminate the land, will lead to individual liability. But acts taken only as trustee cannot lead to individual liability, for such liability is limited by the 1996 amendment to the assets in the trust.

Here, the complaint does not allege McLemore performed any specific acts in a beneficiary capacity. Instead, the complaint merely provides: "Defendant Cheryl Plato McLemore acted in her capacity as the beneficiary of the Trust by receiving money or other benefits from the Trust; and in that capacity, she indirectly or directly benefitted

4

from the activities of the Trust" (Amd. Compl. ¶ 9). In other words, the complaint alleges that receiving benefits as a beneficiary constitutes acting in a beneficiary capacity. This is not enough. Plaintiff would have to allege acts by a responsible party, here a trustee, that also were acts in a beneficiary capacity. While trustee acts are here alleged and while McLemore is allegedly a beneficiary, no act complained of was taken in her capacity as a beneficiary. Mere receipt of trust distributions is not enough. The motion to dismiss for failure to state a claim with regard to trustee liability is therefore **GRANTED**.

### B. Individual Liability as a Beneficiary.

Plaintiff also contends McLemore is individually liable under CERCLA § 107 as a beneficiary. CERCLA neither expressly extends liability to beneficiaries nor expressly protects beneficiaries from liability. Rather, CERCLA imposes liability on "owners or operators" of contaminated property. 42 U.S.C. § 9607(a).

No binding decision has determined whether or not trust beneficiaries are owners of trust-held property for purposes of CERCLA. *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440 (9th Cir. 2011), however, is instructive. It dealt with whether a holder of a revocable permit to use real property was liable as an owner under CERCLA. Our court of appeals first addressed what methodology should be employed in making such a determination, providing that courts "should look to the common law — including the law of the state where the land at issue is located — in determining whether a party [is] an 'owner' for purposes of CERCLA liability." 635 F.3d at 448. The court then discussed what type of property interest under California common law would suffice to confer liability. It repeatedly distinguished between "absolute title ownership to real property" and "less-than fee-title possessory interests in real property," explaining that:

> In establishing "owner" liability, Congress did not say "de facto owner," or "possessor," or "person with some incidents or attributes of ownership," as it has in other legislation . . . [i]nstead it used the unmodified term "owner" which, as the Supreme Court of California noted in *Abila*, "when used alone, imports an absolute owner."

5

*Id.* at 451 (quoting *Dirs. of Fallbrook Irrigation Dist. v. Abila*, 106 Cal. 355, 362 (1895)). Ultimately, it held the holder of a revocable permit is not the "owner" of that real property, and thereafter concluded:

> We need not reach the broader question whether any other property interest less than absolute title to real property — such as a lease — is sufficient to expose the holder of that interest to "owner" liability under CERCLA. We suggest, without deciding, that Congress intended to limit "owner" liability to those individuals possessing *all* of the proverbial "sticks in the bundle of rights," including fee title to the real property.

*Id.* at 452 n.10 (emphasis added). In other words, our court of appeals has suggested only those persons and entities with the core attributes of ownership, pursuant to their ownership under the law, may be held liable as owners under CERCLA. Thus, to determine whether or not a trust-beneficiary is an owner of trust-owned property for purposes of CERCLA, this order finds it proper to look to the common law, including California state law, to ascertain whether trust-beneficiaries constitute such owners.

"[U]nder California law, trust beneficiaries hold an equitable interest in trust property and are 'regarded as the real owner[s] of [that] property.'" *In re Schwarzkopf*, 626 F.3d 1032, 1039 (9th Cir. 2010) (quoting *Steinhart v. County of L.A.*, 47 Cal. 4th 1298, 1319 (2010)). "However, the general principle that a trust beneficiary is considered to be the real owner of a trust property does not diminish the fact that the trust beneficiary does not have full fee title to the property." *Beyer v. Tahoe Sands Resort*, 129 Cal. App. 4th 1458, 1476 (2005). Even if a less-than fee-title property interest may suffice to confer liability, however, beneficiaries rarely possess more than a few of the proverbial "sticks in the bundle of rights." Consequently, this order holds beneficiaries do not constitute owners for purposes of CERCLA liability. Accordingly, the complaint's allegations that McLemore is individually liable in her beneficiary capacity fail to state a claim. The motion to dismiss for failure to state a claim with regard to beneficiary liability is therefore **GRANTED**.

   **2.    JUDICIAL NOTICE.**

McLemore appended the Amended Trust Agreement to her FRCP 12 motion to dismiss and seeks judicial notice of the document under FRE 201(b)(2). McLemore offers the document

to show the extent of her authority as a beneficiary and says its validity is undisputed. Plaintiff replies that the document and its contents are outside the scope of the pleadings and should not be considered. This order agrees. It is inappropriate at this stage to start digging into the true facts. The alleged facts in the pleadings supply the "facts." The important issues within the claim will not be decided on the basis of an incomplete record. This order expressly excludes the evidence appended to Stacy L. Henderson's declaration in support of defendant's motion to dismiss and the request for judicial notice is **DENIED**.

## CONCLUSION

To the extent stated above, the motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Dated: November 1, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE