1  XAVIER BECERRA
   Attorney General of California
2  DAVID A. ZONANA
   Supervising Deputy Attorney General
3  REED SATO
   Deputy Attorney General
4  State Bar No. 87685
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-7789
     Fax: (916) 327-2319
7    E-mail: Reed.Sato@doj.ca.gov
   *Attorneys for Plaintiff*
8

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO/OAKLAND DIVISION

13

| 14 | **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,** | 3:19-cv-01116-WHA |
|----|----|----|
| 15 | | **NOTICE OF MOTION AND MOTION FOR APPROVAL OF CONSENT** |
| 16 | Plaintiff, | **DECREE BETWEEN PLAINTIFF AND DEFENDANTS DEE M. MCLEMORE** |
| 17 | v. | **TRUST, CHERYL PLATO MCLEMORE, JOHN MCKENNA, AND JAMES TODD** |
| 18 | **DEE M. McLEMORE TRUST, CHERYL PLATO McLEMORE, in her individual and** | **RUSSELL; and MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 19 | **representative capacities, JOHN McKENNA, in his representative capacity,** | **SUPPORT THEREOF** |
| 20 | **JAMES TODD RUSSELL, in his** | Date:      March 18, 2021 |
|    | **representative capacity, HARD CHROME** | Time:      8:00 a.m. |
| 21 | **ENGINEERING, INC.,** | Dept:      12 |
| 22 | Defendants. | Judge:     Honorable William H. Alsup |
|    | | Trial Date:  April 12, 2021 |
|    | | Action Filed: 3/28/2019 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR APPROVAL OF CONSENT DECREE .............. 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF..................... 3

INTRODUCTION ............................................................................................................... 3

    I.       FACTUAL BACKGROUND ................................................................................ 4

          A.    Site History. ............................................................................................ 4

          B.    Response Actions at the Site. ................................................................. 4

          C.    Initiation of the Action. ........................................................................ 6

          D.    Settlement............................................................................................... 7

    II.      SUMMARY OF CONSENT DECREE ................................................................. 7

          A.    Terms of Consent Decree with the Settling Defendants ........................... 7

          B.    Public Notice and Opportunity for Comment ........................................... 9

    III.     ARGUMENT ........................................................................................................ 10

          A.    Standard of Review for Entry of CERCLA Settlements........................... 10

               1.    The Consent Decree is Procedurally Fair...................................... 11

               2.    The Consent Decree is Substantively Fair. ................................... 12

               3.    The Consent Decree is Reasonable. .............................................. 13

               4.    The Consent Decree is Consistent with the Purposes of CERCLA. ..................................................................................... 15

CONCLUSION .................................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

CASES

4

5

*Arizona v. City of Tucson*
    761 F.3d 1005 (9th Cir. 2014)...................................................................10, 11, 12

6

*Arizona v. Nucor Corp.*
    825 F.Supp. 1452 (D. Ariz. 1992).................................................................13, 15

7

8

*U.S. v. Akzo Coatings of Am.*
    949 F.2d 1409 (6th Cir. 1991).............................................................................10

9

*U.S. v. State of Oregon*
    913 F.2d 576 (9th Cir. 1990)...............................................................................10

10

11

*United States v. Cannons Engineering Corp.*
    899 F.2d 79 (1st Cir. 1990) ........................................................................ *passim*

12

13

*United States v. Montrose Chem. Corp.*
    50 F.3d 741 (9th Cir. 1995)...............................................................10, 11, 12

14

STATUTES

15

42 U.S.C.

16

    § 9601(24).............................................................................................................5

17

    § 9601(25).............................................................................................................4
    §§ 9601 et seq. .....................................................................................................3

18

    § 9607...................................................................................................................6
    § 9607(a)(1)..........................................................................................................6

19

    § 9607(a)(2)..........................................................................................................6
    § 9613(g)(2)..........................................................................................................6

20

21

California Health and Safety Code
    § 25358.3..............................................................................................................4

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF CONSENT DECREE TO ALL DEFENDANTS AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 18, 2021 at 8:00 a.m. or as soon thereafter as the matter may be heard before this Court, Plaintiff the State of California Department of Toxic Substances Control ("Department") will and hereby does move this Court for judicial approval of the proposed consent decree between the Department and Defendants Dee M. McLemore Trust ("the Trust"), Cheryl Plato McLemore, in her representative capacity as trustee of the Trust, John McKenna, in his representative capacity as trustee of the Trust and James Todd Russell, in his representative capacity as trustee of the Trust (collectively, "Settling Defendants").   The hearing on the Department's motion will take place before the Honorable William Alsup, United States District Judge, in the Courtroom 12 on the 19th floor, located at 450 Golden Gate Avenue, San Francisco, California, 94102.

The Department's motion seeks entry of the proposed consent decree lodged in the above-captioned action on October 7, 2020.  Docket # 75-1.  The proposed consent decree requires the Trust to pay a portion of the Department's response costs incurred at the former chromium plating site on real property owned by the Trust.  Because the proposed consent decree between the Department and Settling Defendants is fair, reasonable, and consistent with the purposes of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, the Department requests that the Court approve the consent decree as a judgment of the Court.

This motion is based on this notice, the memorandum of points and authorities, and declaration of Henry Wong filed concurrently, and upon such other evidence and argument as may be presented to the Court.

1

1    Dated:  February 11, 2021                    Respectfully Submitted,

2                                                 XAVIER BECERRA
                                                  Attorney General of California
3                                                 DAVID A. ZONANA
                                                  Supervising Deputy Attorney General
4

5                                                 */s/ Reed Sato*

6                                                 REED SATO
                                                  Deputy Attorney General
7                                                 *Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Not. of Mot. and Mot. for Approval of Consent Decree; Memo of Ps and As In Support Thereof (3:19-cv-1116-WHA)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**INTRODUCTION**

Plaintiff the State of California Department of Toxic Substances Control (the "Department") respectfully submits this Memorandum of Points and Authorities in Support of the Department's motion for judicial approval and entry of the proposed Consent Decree between the Department and Defendants Dee M. McLemore Trust ("the Trust"), Cheryl Plato McLemore, in her representative capacity as trustee of the Trust, John McKenna, in his representative capacity as trustee of the Trust and James Todd Russell, in his representative capacity as trustee of the Trust (collectively, "Settling Defendants") concerning the Hard Chrome Engineering Site ("the Site"). The Site includes a 0.64-acre parcel with street addresses of 750 and 764 107th Avenue in Oakland, Alameda County, California, and consists of Assessor's Parcel Number 45-5251-5-2, on which Hard Chrome Engineering conducted its operations ("the Property"), and the areal extent of the hazardous substance contamination, including contamination of surface, subsurface areas and groundwater, that is, or has been, present at, beneath, and/or has migrated from the Property.

The Department's complaint in this action was filed pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.

In this action, the Department seeks to recover under CERCLA the unreimbursed costs it incurred in response to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site. The Department and the Settling Defendants negotiated a settlement agreement resolving the Settling Defendants' liability in this action.[1] The settlement agreement is embodied in the proposed Consent Decree lodged with the Court on October 7, 2020. Docket # 75-1.[2] Because the proposed Consent Decree between the Department and the Settling

---

[1] Defendant Hard Chrome Engineering, Inc.is not a party to the proposed Consent Decree. Cheryl Plato McLemore, as an individual, was dismissed as a defendant pursuant to a motion granted on November 1, 2019. Docket #61.

[2] An initial proposed Consent Decree was lodged on September 22, Docket # 74-1. The signatory of that proposed Consent Decree was not authorized to bind the Plaintiff so a new signatory was required and a Settlement Agreement and [Proposed] Consent Decree (Corrected) was lodged on October 7, 2020.

3

Defendants is fair, reasonable, and consistent with the purposes of CERCLA, the Department

requests that the Court approve and enter the Consent Decree as a judgment of the Court.

I.      FACTUAL BACKGROUND

    A.      Site History.

    As alleged in the Complaint, from approximately 1972 until 2005, Defendant Hard Chrome

Engineering, Inc. (Hard Chrome) operated a metal and chromium plating business on the

Property.  Ownership of the Property transferred to the Trust on or around 1987.  The period of

operation of the Hard Chrome Engineering business included the time during which the Property

was owned by the Trust and the named individuals were co-trustees.

    Hard Chrome's chromium plating operation and machining services operation included the

use of cleaning baths for machine parts, mechanical stripping by sandblasting and grinding, and

plating baths that used chromic and sulfuric acid.  Other chemicals used during operations

included sodium nitrate, potassium chromate, triethylamine, kerosene, argon, carbon dioxide,

acetylene, oxygen, hydrochloric acid, chromic oxide, chromic acid, sulfuric acid and sodium

carbonate.

    The Department alleges that at various times during its operations at the Property, Hard

Chrome disposed of and/or released hazardous substances directly onto the ground at the

Property.  The Department further alleges that Hard Chrome utilized an exhaust hood that emitted

fumes or particulate chromium and metals.  Those emissions were deposited to the ground on and

around the Property.

    B.      Response Actions at the Site.

    The Department has incurred "response" costs as that term is defined in section 101(25) of

CERCLA, 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened release

of hazardous substances at, around, and/or beneath the Site.  *Id.*, ¶ 25.

    In March 2005, the Department issued an Imminent and Substantial Endangerment

Determination and Consent Order (I&SE Order) to the Trust pursuant to the Department's

authority under California Health and Safety Code § 25358.3.  The I&SE Order required the Trust

4

1    to investigate and remediate the release of hazardous substances at and from the Site.  (Decl.

2    Wong, ¶ 5).

3           The contaminants of concern (COCs) at the Site are cadmium, total chromium, hexavalent

4    chromium, lead, total petroleum hydrocarbons as diesel-range organics, and total petroleum

5    hydrocarbons as motor oil-range organics. The soil contaminated with these COCs appears to be a

6    continuing source of hexavalent chromium to groundwater under the Property. (Decl. Wong, ¶ 9).

7           After undertaking some remedial action required by the I&SE Order, the Trust notified the

8    Department on or around June 30, 2008 that it could no longer comply with the I&SE Order

9    allegedly due to insufficient assets in the Trust.  After the Trust stopped performing response

10   actions, the Department took over the investigation and remediation of the Site in 2008. (Decl.

11   Wong, ¶ 6).

12          On or around March 12, 2012, the Department approved a Removal Action Workplan

13   (RAW) for the Site in which it selected a remedy. This was a "remedial action" as defined by 42

14   U.S.C. § 9601(24). The remedy consisted of the excavation of two on-site sumps and soil

15   contaminated by hazardous substances, including chromium contaminated soil.  The remedy also

16   included in-situ injections to treat chromium in the groundwater under the Site. (Decl. Wong, ¶¶ 7

17   – 9).

18          On or around March 4, 2013, the Department initiated physical on-site construction of the

19   remedy for the Site with the following results:

20          •    The Department completed excavation of contaminated soil at the Property and

21               approved a completion report on or around May 4, 2015.

22          •    The Department also conducted a full-scale groundwater treatment program in June

23               2014 and performed several supplemental groundwater injections, including a recent

24               event in June 2020.  Periodic groundwater monitoring is necessary to ensure that

25               chromium concentrations are approaching cleanup goals without rebounding.

26          The Department's response actions at the Site include, but are not limited to:

27   investigation; removal actions; enforcement/cost recovery; oversight; public participation; and

28   compliance with the California Environmental Quality Act.  As of September 30, 2020, the

5

1  Department's costs incurred in response to the release and/or threatened release of hazardous

2  substances at the Site were approximately

3  $ 3,541,975.74, including interest and legal fees. (Decl. Wong ¶ 11).

4         As an option for the Property as part of a final remedy, the Department may execute and

5  record, or cause to be executed and recorded by any purchaser of the Property, a Land Use

6  Covenant that may, among other things: (a) limit use of the Property to commercial or industrial

7  uses unless additional response action is taken at the Property with the approval of the

8  Department that would allow for additional uses of the Property from a public health perspective;

9  (b) protect against interference with any ongoing Department response actions at the Site; (c)

10 restrict the use of existing groundwater at the Property; and (d) require that the Property's existing

11 building foundation and interior concrete floor be maintained in order to serve as a cap based on

12 the risk to public health and the environment due to the remaining presence of hazardous

13 substances on the Property.  However, before any such remedy could be adopted, the Department

14 would pursue a process to obtain public comment on any amendment to or modification of the

15 Remediation Action Workplan. (Decl. Wong, ¶ 9).

16        **C.     Initiation of the Action.**

17         On February 28, 2019, the Department filed a complaint seeking recovery of the

18 Department's past response costs pursuant to sections 107 and 113 of CERCLA, 42 U.S.C. §

19 9607.  Docket # 1. In the complaint, the Department alleges that the Settling Defendants are the

20 current owners and/or operators of the Site, or were owners and/or operators of the Site at the

21 time hazardous substances were disposed of there, under CERCLA section 107(a) (1) and (2), 42

22 U.S.C. § 9607(a)(1) and (2).  (Comp., ¶¶ 33 – 35).  The Department alleged that the Settling

23 Defendants are jointly and severally liable for the Department's costs incurred responding to

24 releases and/or threatened releases of hazardous substances into the soil at, beneath, and/or from

25 the Site.  Comp., ¶ 40.  The Department further requested declaratory relief that all defendants are

26 liable for the Department's future response costs incurred at the Site pursuant to section 113(g)(2)

27 of CERCLA, 42 U.S.C. § 9613(g)(2).  (Comp., ¶¶ 41 – 43).

28

**D.    Settlement.**

The Department and the Settling Defendants engaged in settlement negotiations to resolve the Settling Defendants' liability for the Department's response costs incurred at the Site pursuant to CERCLA.  The parties submitted to court-supervised mediation with Magistrate Judge Kandis Westmore on May 27, 2020.  Following the progress made during the mediation session, the parties diligently worked to craft the resolution presented for the Court's approval. (Decl. Wong, ¶¶ 12 -13).

In evaluating a settlement of the Settling Defendants' liability, the Department considered, among other things Settling Defendants' proportionate liability, the response costs the Department incurred at the Site, the risks of pursuing the Department's claims against the Settling Defendants, the specific representations made by the Settling Defendants about their financial condition, and the challenge presented by the fact that the Trust's assets were equities invested in the stock market and that a significant non-cash asset of the Trust consisted of the Property. (Decl. Wong, ¶14 – 16).

**II.    SUMMARY OF CONSENT DECREE**

**A.    Terms of Consent Decree with the Settling Defendants**

After arm's length good faith settlement negotiations, the Department and the Settling Defendants reached a settlement of Settling Defendants' liability in the action.   (Decl. Wong, ¶ 13).  The Settling Defendants and the Department jointly negotiated the settlement and the terms of the proposed Consent Decree, and all parties were represented by counsel.  The Department lodged the proposed Consent Decree with the Court on October 7, 2020. Docket # 75-1.

The main provisions of the proposed Consent Decree are the following:

1.    Payments to the Department.

a.    Investment Assets:    The Consent Decree provides that the Settling Defendants identify their investment and real property assets.  As of June 5, 2020, the Trust represented that its non-real property assets had a value of $1,788,969.94. Of those assets, the Trust will sell those investments and will pay the Department $1,450,000 within sixty (60) days of the approval of the Consent Decree. In the event that the sale of the assets results in amount

7

1   greater than $1,700,000, the Department would receive any funds in excess of $1,750,000.

2   Consent Decree, ¶ 5.1.

3            b.      Real Property Assets:  The Property is recognized as a valuable asset of

4   the Trust. The Trust will have a year from the effective date of the Consent Decree to sell the

5   Property using commercially reasonable efforts.  The current fair market value of the Property is

6   $850,000 and therefore any sale of the Property for a price at or higher than $850,000 will be

7   considered "commercially reasonable."  Assuming that a sale is completed within the one-year

8   "sales opportunity period", by April 15, 2021, the Trust will pay the Department net sales

9   proceeds of up to $300,000.

10           2.   Recording of a Land Use Covenant.  After the Effective Date of the Consent

11  Decree, Settling Defendants, upon request of the Department, will execute and record, or cause to

12  be executed and recorded by any purchaser of the Property, a Land Use Covenant (substantially

13  in the form attached as Exhibit "C" to the Consent Decree) that may (a) limit use of the Property

14  to commercial or industrial uses unless additional response action is taken at the Property with the

15  approval of the Department that would allow for additional uses of the Property from a public

16  health perspective; (b) protect against interference with any ongoing Department response actions

17  at the Site; (c) restrict the use of existing groundwater at the Site; and (d) require that the Site's

18  existing building foundation and interior concrete floor be maintained in order to serve as a cap

19  based on the risk to public health and the environment due to the remaining presence of

20  Hazardous Substances on the Property.  The Settling Defendants and any subsequent owners of

21  the Property may request that the Department agree to a modification of the Land Use Covenant.

22  Neither the Settling Defendants nor any subsequent owners may modify the Land Use Covenant

23  without prior Department written approval.  If, Settling Defendants sell the property during the

24  Sales Opportunity Period, but prior to any request by the Department to record a Land Use

25  Covenant, Settling Defendants are required to include a provision in the terms of sale of the

26  Property, obligating the potential purchaser or transferee to record a Land Use Covenant upon

27  request of the Department, in substantially similar form as Exhibit "C" to the Consent Decree and

28  with substantially similar terms.

3.    <u>Restrictions on the Use of the Property</u>.  There are restrictions on the use of the Property while the remediation of the Property is ongoing and following the remediation. (Consent Decree, ¶¶ 7, 8).

4.    <u>Covenant Not to Sue</u>.  The Consent Decree provides that in exchange for the actions to be performed and the payments that will be made pursuant to the Consent Decree, the Department covenants not to sue the Settling Defendants for response costs incurred at the Site. The covenant not to sue is subject to certain reservations of the Department's rights, including but not limited to the right to reopen this action or institute a new action based on new information relating to the Settling Defendants' liability, or previously unknown conditions relating to the Site.  (Consent Decree, ¶ 13).

5.    <u>Contribution Protection</u>.  The Consent Decree provides the Settling Defendants with contribution protection to the extent permitted by law for "Matters Addressed" by the Consent Decree.  (Consent Decree, ¶ 16.2).

6.    <u>Document Retention</u>.  The Consent Decree also states that on the Department's request, the Settling Defendants shall provide to the Department copies of all records, documents and information within their possession or control or that of their agents relating to: reports of construction activities, contracts, invoices, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, easements, permits, grants of access to public property, city government resolutions, the ownership, operation, or control of the Site, and the purchase, storage, use, handling, generation, treatment, transportation, or disposal of Hazardous Substances in connection with the Site.  Settling Defendants shall preserve such records until six (6) years after the completion Site Specific Response Action, or six (6) years after creation of a record or document, whichever is later. (Consent Decree, ¶ 17).

**B.    Public Notice and Opportunity for Comment**

On or about October 27, 2020, the Department published notice of the proposed Consent Decree in English and Spanish in two local newspapers.  On the same date, the Department published notice of the proposed Consent Decree in the California Regulatory Notice Register

9

1    and invited the public to comment upon the proposed Consent Decree.  The notice requested that

2    comments on the Consent Decree be submitted to the Department between October 29, 2020

3    through December 3, 2020.  *Id.* The Department received no comments regarding the Consent

4    Decree.  (Decl. Wong, ¶ 17).

5    **III.    ARGUMENT**

6        For the reasons stated below, the Department requests that the Court approve and sign the

7    proposed Consent Decree previously lodged with the Court.

8        **A.    Standard of Review for Entry of CERCLA Settlements.**

9        A district court reviewing a CERCLA consent decree must "satisfy itself that the

10    settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to

11    serve." *United States v. Cannons Engineering Corp.* ("*Cannons*"), 899 F.2d 79, 85 (1st Cir. 1990)

12    (quoting the legislative history to the 1986 CERCLA amendments); *accord United States v.*

13    *Montrose Chem. Corp.* ("*Montrose*"), 50 F.3d 741, 746 (9th Cir. 1995).  "The relevant standard is

14    not . . . whether the settlement is one which the court itself might have fashioned, or considers as

15    ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the

16    governing statute." *Cannons*, 899 F.2d at 84.  Further, a "district court has an 'obligation to

17    independently scrutinize the terms of [such agreements],' by *inter alia*, comparing the 'proportion

18    of total projected costs to be paid by the [settling parties] with the proportion of liability

19    attributable to them." *Arizona v. City of Tucson*, 761 F.3d 1005, 1008 (9th Cir. 2014).

20    Accordingly, the district court should engage in a "comparative analysis." *Id.* (*quoting Montrose*,

21    50 F.3d at 747).

22        Approval of a proposed consent decree is committed to the discretion of the district court.

23    *U.S. v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).  The court's discretion should be

24    guided by CERCLA's express policy of encouraging early settlements.  *Montrose*, 50 F.3d at 746.

25    Where the settlement has been negotiated by a governmental agency with expertise in enforcing

26    environmental laws, a district court should "give a proper degree of deference to the agency's

27    expertise." *U.S. v. Akzo Coatings of Am.*, 949 F.2d 1409, 1426 (6th Cir. 1991); *see also*

28    *Montrose*, 50 F.3d at 746.  The Department has expertise concerning the cleanup of the Site, and

10

1    therefore, the Court may afford "some deference" to the Department's judgment concerning the

2    environmental issues underlying the proposed Consent Decree in this case.  *See City of Tucson,*

3    761 F.3d at 1014.  In the *Montrose* case, the Ninth Circuit noted that:

4         CERCLA's settlement policy of encouraging early settlement is
          strengthened when a government agency charged with protecting
5         the public interest 'has pulled the laboring oar in constructing the
          proposed settlement.'
6

7    *Montrose*, 50 F.3d at 746 (quoting *Cannons*, 899 F.2d at 84).

8         Certain state agencies may have more expertise concerning the enforcement of

9    environmental laws, which a district court may properly take into account in assessing the

10   deference owed to an agency's expertise.  *City of Tucson,* 761 F.3d at 1014, n. 8.  Here, the

11   Department is the lead state agency responsible for enforcing the Hazardous Substances Account

12   Act ("HSAA") and for investigating and remediating releases of hazardous substances in

13   California.  The HSAA is the state analog to CERCLA.  Accordingly, when evaluating the

14   proposed Consent Decree, the Court, may consider the Department's expertise in the enforcement

15   of environmental laws.  *See City of Tucson,* 761 F.3d at 1014.

16        Courts reviewing consent decrees under CERCLA have considered the following factors:

17   (1) procedural fairness; (2) substantive fairness; (3) reasonableness; and (4) fidelity to CERCLA.

18   *Cannons*, 899 F.2d at 85-93.  For reasons set forth below, these factors are satisfied by the

19   proposed Consent Decree. Accordingly, the Court should approve and enter the Consent Decree.

20        **1.    <u>The Consent Decree is Procedurally Fair.</u>**

21        "[F]airness in the CERCLA settlement context has both procedural and substantive

22   components."  *Cannons*, 899 F.2d at 86.  "To measure procedural fairness, a court should

23   ordinarily look to the negotiation process and attempt to gauge its candor, openness and

24   bargaining balance."  *Id*.

25        Here, the Consent Decree is the product of arm's length settlement negotiations between

26   the Settling Defendants and the Department over many months.  (Decl. Wong, ¶¶12 – 13). The

27

28

1    Department and the Settling Defendants jointly negotiated the terms of the proposed Consent

2    Decree.

3        In a further attempt to ensure procedural fairness, the Department published notice of the

4    lodging of the proposed Consent Decree in the California Regulatory Notice Register, and invited

5    comments on the Consent Decree.  The Department received no comments from the public on the

6    proposed Consent Decree. (Decl. Wong, ¶ 17).  The Department has thus ensured procedural

7    fairness by engaging in arm's length negotiations, and providing the public with notice and an

8    opportunity to comment on the Consent Decree.

9        **2.    The Consent Decree is Substantively Fair.**

10        To determine whether a consent decree is substantively fair, a district court must

11    scrutinize a proposed consent decree to determine whether the estimates of responsibility and

12    damages were fairly proportioned among the settling defendants.  *Cannons*, 899 F.2d at 87-89.  In

13    assessing substantive fairness, courts often "compare the proportion of total projected costs to be

14    paid by the settlors with the proportion of liability attributable to them, and then . . . factor into

15    the equation any reasonable discounts for litigation risks, time savings, and the like that may be

16    justified." *Montrose,* 50 F.3d at 747.  A district court reviewing consent decrees negotiated by a

17    state government agency may give the state agency's expertise "some deference" when weighing

18    substantive fairness.  *City of Tucson,* 761 F.3d at 1014.  Such deference is appropriate here

19    because the Department is a state agency with expertise in the area of cleanups of hazardous

20    substance releases.

21        Here, the settlement is designed to ensure that the Settling Defendants accept meaningful

22    responsibility for the cleanup of the Site subject to the limitations of the available assets.  The

23    proposed Consent Decree requires the Settling Defendants to reimburse the Department's

24    response costs in the amount of at least One Million, Four Hundred and Fifty Thousand Dollars

25    ($1,450,000) (Consent Decree, ¶ 5.1) and to sell the Property and provide the revenue generated

26    by the sale to the Department.  Consent Decree, ¶ 6.

27        The settlement reflects the Department's assessment of the strengths and weakness of the

28    evidence supporting its claim of the Settling Defendants' liability, the Settling Defendants'

12

1  defenses, the litigation risks, and costs of going to trial in this case.  Based on these factors, and

2  the fact that the Department would be paid a substantial portion of all of the Trust's remaining

3  assets, the Department determined that the settlement amount to be paid by Settling Defendants

4  pursuant to the proposed Consent Decree was appropriate. (Decl. Wong, ¶ 16).  For all of the

5  above reasons, the Court should give deference to the Department's evaluation and find that the

6  proposed Consent Decree is substantively fair.

       **3.**    **The Consent Decree is Reasonable.**

8        Determining whether a proposed consent decree is reasonable is a "multifaceted exercise."

9  *Cannons*, 899 F.2d at 89.  "The court's role is not to determine whether the [settlement] is the

10  best possible settlement that the State could have achieved, but rather whether the settlement is

11  within the reaches of the public interest."  *Arizona v. Nucor Corp.* ("*Nucor*"), 825 F.Supp. 1452,

12  1464 (D. Ariz. 1992), *aff'd*, 66 F.3d 213 (9th Cir. 1995) (quotation marks omitted).  The *Cannons*

13  court recognized that:

> [T]he reasonableness of a proposed settlement must take into account foreseeable risks of loss. . . . [E]ven if the government's case is sturdy, it may take time and money to collect damages or to implement private remedial measures through litigatory success. To the extent that time is of essence or that transaction costs loom large, a settlement which nets less than full recovery of cleanup costs is nonetheless reasonable.

19  *Cannons*, 899 F.2d at 90.  In determining whether a settlement is reasonable, courts look to: (1)

20  whether the proposed settlement will be effective in ensuring a cleanup of the property, (2)

21  whether it satisfactorily compensates the public for the costs of cleanup, and (3) whether the

22  settlement reflects the relative strengths of the parties' bargaining positions.  *Id.* at 89-90.

23        <u>Effectiveness</u>.  The proposed Consent Decree is effective in ensuring cleanups of

24  contaminated sites, because under the settlement the Settling Defendants, consistent with an

25  ability to pay, will contribute funds toward the reimbursement of the Department's past response

26  costs incurred cleaning up the Site.

13

1         <u>Benefit to the Public</u>.  The proposed Consent Decree satisfactorily compensates the public

2    for response costs because the Consent Decree requires the Settling Defendants to pay a portion

3    of the Department's costs incurred investigating and cleaning up the Site.

4         <u>Relative Strengths of the Parties</u>.  The proposed Consent Decree reflects the relative

5    strengths of the parties' bargaining positions.  While the Department believes that it would prevail

6    against the Settling Defendants should this matter proceed to trial, the Department acknowledges

7    that there is a risk that it will not be able to achieve a complete recovery against the Settling

8    Defendants, and even a victory at trial will entail substantial expense.

9         In this matter, the Department is confronted with a basic cost-recovery problem:  its

10   response costs both past and future, exceed the assets of the Trust.  Therefore, as long as the

11   Department seeks payments in excess of those assets, the Trust has no incentive to settle.  The

12   Trust may just as easily spend its resources on defense costs rather than pay the Department for

13   undertaking the work to protect the public from the threat posed by the Site.  The Department's

14   acceptance of the settlement was an effort to provide some incentive to the Trust to end its dispute

15   with the Department even if the Department is not made whole as it otherwise would be entitled

16   to as a matter of law. (Decl. Wong, ¶14).

17        The Department understands that under the current circumstances it has no good prospects

18   for being fully repaid by the Trust for the response actions it has taken and will take at this Site to

19   protect the health and safety of the citizens in the surrounding community.  The Department

20   understands that if it litigated its claims to conclusion against the Trust, it would both increase its

21   response costs through legal fees and expenses and concurrently drain the assets of the Trust (for

22   legal defense costs), and thereby directly reduce the amount of funds ultimately available to repay

23   the Department for the necessary response actions.   In recognition of that reality, the Department

24   reached a resolution that provided the Trust with an incentive to end the litigation with the

25   Department.

26        The proposed Consent Decree requires the Settling Defendants to pay a portion of the

27   Department's costs incurred to clean up the Site without the long delays and costs associated with

28   litigation.  The settlement payment required by the proposed Consent Decree properly reflects the

14

relative bargaining positions of the Department and the Settling Defendants.  For the reasons set forth above, the proposed Consent Decree is reasonable.

### 4.    The Consent Decree is Consistent with the Purposes of CERCLA.

A consent decree must also be consistent with the "overarching principles" of CERCLA, namely, "accountability, the desirability of an unsullied environment, and the promptness of response activities."  Nucor, 825 F. Supp. at 1464 (quoting Cannons, 899 F.2d at 90). CERCLA's twin goals are: (1) to create a prompt and effective response to hazardous waste problems; and (2) to ensure that those responsible for the problems their disposal caused bear the costs and responsibility for remedial action.  Cannons, 899 F.2d at 90-91.

The proposed Consent Decree requires the Settling Defendants to partially reimburse the Department's response costs incurred cleaning up the Site.  Consent Decree, ¶¶ 5.1, 6.4.  The Settling Defendants bear responsibility for the problems caused by releases and/or threatened releases of hazardous substances at the Site.  In the present case, the Consent Decree satisfies the two goals of CERCLA.  It is therefore consistent with the principles of CERCLA and should be approved.

////

////

////

////

////

/////

15

1

**CONCLUSION**

2    In sum, the proposed Consent Decree is the result of arm's length settlement negotiations

3    between the Department and the Settling Defendants.  The Consent Decree requires the Settling

4    Defendants to pay a meaningful portion of the Department's response costs for the investigation

5    and cleanup at the Site.  For the reasons described above, the Department respectfully requests

6    that the Court approve and enter the proposed Consent Decree as a judgment of the Court.

7                                        Respectfully submitted,

8    Dated:  February 11, 2021            XAVIER BECERRA
                                          Attorney General of California
9                                         DAVID A. ZONANA
                                          Supervising Deputy Attorney General
10

11                                        */s/ Reed Sato*

12                                        REED SATO
                                          Deputy Attorney General
13                                        *Attorneys for Plaintiff*
                                          *California Department of Toxic Substances Control*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28