UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,

    Plaintiff,

v.

DEE M. MCLEMORE TRUST, et al.,

    Defendants.

No. C 19-01116 WHA

**ORDER APPROVING PROPOSED CONSENT DECREE**

## INTRODUCTION

In this civil action to compensate the California Department of Toxic Substances Control for costs incurred in the cleanup of a polluted plot of land, the Department and the landowner have reached an accord. The proposed consent decree being fair, reasonable, and serving the intent of the statute, the motion for its approval, to the following extent, is **GRANTED**.

## STATEMENT

A prior order details our facts (Dkt. No. 61). In brief, this action centers around the contamination of real property in Oakland. Between 1972 and 2005, defendant Hard Chrome Engineering, Inc. operated a metal and chromium-plating business on the plot, which involved cleaning baths for machine parts, mechanical stripping by sandblasting and grinding, and plating baths which used chromic and sulfuric acid. Other chemicals used onsite included sodium nitrate, potassium chromate, triethylamine, kerosene, and argon, to name a few.

During operations, Hard Chrome deposited hazardous substances directly into the ground or emitted them into the air (and around the plot) via an exhaust hood.

Hard Chrome originally leased the land from Dee M. McLemore, but began leasing the land from our defendant, the Dee M. McLemore Trust, in about 1988. Upon Mr. McLemore's death in 1992, his surviving spouse, Cheryl Plato McLemore, became a co-trustee and the designated beneficiary of the trust.

In 2005, the California Department of Toxic Substances Control executed an Imminent and Substantial Endangerment Determination and Consent Order that required the Trust to investigate and remediate the release of hazardous substances at and from the Hard Chrome Engineering real property. In 2008, however, Ms. McLemore informed the Department that the trust could no longer comply with the I&SE Order, allegedly due to insufficient assets. The Department took over the investigation and remediation. It approved a removal action workplan in 2012 and began physical on-site construction of a remedy in 2013. As of September 30, 2020, the Department has expended $3,541,975.74 (including interest and legal fees) on the cleanup effort.

In February 2019, the Department sued for reimbursement under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq*. Following limited motion practice, the undersigned referred the parties to Magistrate Judge Kandis Westmore for mediation. Following several sessions, the parties reached an agreement. After the appropriate public comment period, the Department moves for approval of the proposed consent decree. This order follows unopposed briefing by the Department and is appropriate for disposition on the papers.

**ANALYSIS**

A consent decree under CERCLA must be fair, reasonable, and consistent with the Act's objectives. Fairness includes both a procedural component, probing the candor, openness, and balance of the bargaining process, and a substantive component, which ensures the apportionment of liability according to some rational basis. Reasonability probes the technical sufficiency of the cleanup, measures the adequacy of the public's compensation, and accounts

for the realities of litigation. The final prong guarantees that the settlement accords with Congress's objective, expedient and efficient cleansing of our environment. *Arizona v. City of Tucson*, 761 F.3d 1005, 1010–12 (9th Cir. 2014); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990).

The relevant portions of the proposed settlement are as follows. The trust will liquidate both its real and non-real property assets. Of the non-real assets, the trust will pay to the Department $1,450,000 plus the portion of proceeds in excess of $1,750,000. The trust will also sell the plot at issue and pay to the Department the net sale proceeds up to $300,000, plus half the proceeds above that mark if the sale exceeds $400,000. Before sale, the executors of the trust will record a land-use covenant that will: (i) limit the use of the plot to commercial or industrial uses, with appropriate oversite by the Department in the interest of public health; (ii) bar interference with continued Department cleanup activity at the plot; (iii) restrict use of groundwater at the plot; and (iv) require maintenance of the existing foundation and interior concrete floor to contain any remaining hazardous substances. Both the trust and future owners of the plot may negotiate with the Department to update these restrictions in the future, as needed. The proposal rates as fair and reasonable, and advances Congress's intent.

*First*, the proposed settlement indicates no procedural defect. Magistrate Judge Kandis Westmore oversaw the parties' mediation efforts. Both the Department and the Trust were represented by counsel. The Department published the proposed settlement for public comment from October 27 until December 2, 2020, and received none.

*Second*, the proposed settlement is substantively fair because it is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done." That is to say, the settlement is based on both a rational estimate of the cleanup costs involved and rational allocation of fault between the parties. More care would be required in approving the allocation of liability between many parties, whose actual fault still remains hazy, though CERCLA ultimately

imposes strict liability on site owners or operators and places the burden on those defendants to allocate fault between them. *Arizona*, 761 F.3d at 1011–12.

Ours, however, is a simple case. We have two relevant defendants, the trust, which owned the land, and Hard Chrome, which actually polluted it. Here, too, we have not just an estimate of future cleanup costs but the Department's actual bill, $3,541,975.74 (including interest and legal fees), incurred in cleaning the plot. The trust's payment under the settlement, which hovers just north of $1,750,000, accounts for about half of that cleanup bill, leaving a fair fifty-fifty split of the publicly-fronted cost for our two defendants (the Department has moved for a default judgment against Hard Chrome for its share).

*Third*, the proposed settlement is reasonable. It accounts for public costs already expended and imposes land-use restrictions to ensure the efficacy of the Department's continued cleanup efforts, prevent use of contaminated water, contain the pollution below a robust concrete foundation, and prohibit the land from being used for residential purposes, all in the name of public safety. The Department is not entitled to the sort of deference the Environmental Protection Agency would be afforded here. Nevertheless, this order does afford a measure of deference to the Department's expertise in this subject matter and, thus, its determination that these land-use restrictions will, in fact, protect the public health. Certainly no party has appeared to argue otherwise. *Id.* at 1013–14.

The proposed settlement also accounts for the realities of our circumstances. Though the settlement only reimburses half the public cost of the cleanup, the total public bill here exceeds the value of the trust assets, including the plot itself. In fact, the proposed settlement payment accounts for approximately eighty percent of the trust assets, once liquidated. The proposed settlement strikes a balance between reimbursing the public and leaving adequate assets in the trust to support Ms. McLemore. Protracted litigation would only siphon those funds away from both the public and Ms. McLemore.

*Fourth*, the proposed settlement furthers CERCLA's purpose, to enable federal and state governments to cleanse the environment of hazardous waste at pace and to ensure those responsible bear the costs. CERCLA also encourages settlement to avoid inefficient use of

4

public resources through prolonged litigation.  Our proposed settlement puts this dispute to rest after just over two years and holds the landowner responsible for the hazardous conduct that occurred there.  *BNSF v. United States*, 556 U.S. 599, 602 (2009); *Arizona*, 761 F.3d at 1011.

## CONCLUSION

For the foregoing reasons, approval of the proposed consent decree is **GRANTED**.

**IT IS SO ORDERED.**

Dated:   August 3, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE