1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL,

Plaintiff,

v.

DEE M. MCLEMORE TRUST, et al.,

Defendants.

No. C 19-01116 WHA

**ORDER GRANTING DEFAULT
JUDGMENT**

## INTRODUCTION

The California Department of Toxic Substances Control brought this this civil action for compensation of costs incurred in the cleanup of a polluted plot of land. Default has been entered against defendant Hard Chrome Engineering, Inc., and the Department now moves for default judgment. To the extent state below, the motion is **GRANTED**.

## STATEMENT

A prior order details our facts (Dkt. No. 61). In brief, this action centers around the contamination of real property in Oakland. Between 1972 and 2005, Hard Chrome operated a metal and chromium-plating business on the plot, which involved cleaning baths for machine parts, mechanical stripping by sandblasting and grinding, and plating baths which used chromic and sulfuric acid. Other chemicals used onsite included: sodium nitrate, potassium

United States District Court
Northern District of California

chromate, triethylamine, kerosene, and argon, to name a few.  During operations, Hard Chrome deposited hazardous substances directly into the ground or emitted them into the air (and around the plot) via an exhaust hood.

Hard Chrome originally leased the land from Dee M. McLemore but began leasing the land from defendant Dee M. McLemore Trust in about 1988.  Upon Mr. McLemore's death in 1992, his surviving spouse, Cheryl Plato McLemore, became a co-trustee and the designated beneficiary of the trust.

In 2005, the California Department of Toxic Substances Control executed an Imminent and Substantial Endangerment Determination and Consent Order that required the Trust to investigate and remediate the release of hazardous substances at and from the Hard Chrome Engineering real property.  In 2008, however, Ms. McLemore informed the Department that the trust could no longer comply with the I&SE Order, allegedly due to insufficient assets. The Department took over the investigation and remediation.  It approved a removal action workplan in 2012 and began physical on-site construction of a remedy in 2013.  As of September 30, 2020, the Department has expended $3,541,975.74 (including interest and legal fees) on the cleanup effort.

In February 2019, the Department sued for reimbursement under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq*.  Hard Chrome failed to appear in the action, but the remaining defendants engaged in limited motion practice, after which the undersigned referred the dispute to Magistrate Judge Kandis Westmore for mediation.  Following several sessions, those parties reached an agreement.  Parallelly, in February 2021, the Clerk entered a default against Hard Chrome (Dkt. No. 82).  The Department now moves for default judgment finding Hard Chrome jointly and severally liable for $2,459,409.00 for cleanup costs incurred through September 30, 2018. Hard Chrome did not appear at the hearing for this motion, held telephonically due to the COVID-19 pandemic.  This default judgment order is filed in tandem with an order approving the proposed consent decree between the other parties to the action.

**ANALYSIS**

A court has discretion to grant default judgment against a party that fails to plead or otherwise defend against a claim for relief.  *See* FRCP 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court must determine whether it has proper subject-matter and personal jurisdiction over the action, as well as the adequacy of service of process, before ruling on default judgment.  *See In re Tuli,* 172 F.3d 707, 712–13 (9th Cir. 1999); *SEC. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  Upon satisfying the jurisdictional elements, a court then considers the seven *Eitel* factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  All factual allegations, except those for damages, are taken as true.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Nevertheless, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  Furthermore, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

1.      **JURISDICTION AND SERVICE OF PROCESS.**

District courts have subject-matter jurisdiction over civil actions arising under federal law.  28 U.S.C § 1331.  The Department asserts federal claims under CERCLA, which also provides a separate, statutory basis for jurisdiction and venue.  *See* 42 U.S.C. § 9613(b).

Personal jurisdiction can be either general or specific, with general jurisdiction referring to the authority of a court to exercise jurisdiction even where the claim for relief is unrelated to the defendant's contacts with the forum state.   A court may exercise general personal jurisdiction over a corporation that is fairly regarded as at home in the forum state.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017).  Where, as here, there

is no applicable statue governing personal jurisdiction, the district court applies the law of the forum in which it sits. California permits personal jurisdiction to the extent permitted by Constitutional due process. *Burnham v. Sup. Ct.*, 495 U.S. 604, 612, 628 (1990); Cal. Code Civ. Proc. § 410.10. Personal jurisdiction here is satisfied as Hard Chrome is a suspended California corporation that had operated in Oakland; venue is also appropriate. 42 U.S.C. § 9613(b). The Department also satisfactorily completed service of process — the means by which a court asserts its jurisdiction — with substituted service on the California Secretary of State. A May 2019 order approved substituted service for Hard Chrome for all pleadings in this action as the business is a suspended California corporation with its owner deceased (Dkt. Nos. 10-1, 11).

    **2.**    *EITEL* **FACTORS.**

With the threshold jurisdictional requirements satisfied, this order now applies the *Etiel* factors and finds that they support default judgment on plaintiff's two CERCLA claims.

The first factor, prejudice to plaintiff, and the seventh factor, the policy favoring decisions on the merits, both support their opposing positions. The department would be prejudiced if left without a remedy specific to Hard Chrome, even though the company is defunct, and the owner apparently deceased. Granting the obvious policy preferring decisions on the merits in federal court, due to Hard Chrome's status (a suspended corporation with a deceased owner) a decision on the merits does not seem possible. These factors weigh slightly in favor of default judgment.

The sum of money at stake, the fourth *Eitel* factor, is large ($2,459,409.00), but is comparable to the sum sought in *Eitel* of $2,900,000. This factor also moderately supports default judgment. The fifth factor, possibility of a material factual dispute, strongly favors the Department's motion. Hard Chrome is deemed to have admitted the well-pleaded factual allegations, which, due to the nature of a CERCLA claim, leaves little room for factual disputes. The sixth factor, whether defendant's failure to respond was due to excusable neglect, also supports default judgment. The Department properly served Hard Chrome, and

United States District Court
Northern District of California

Hard Chrome made no appearance at the hearing for this motion. Nothing in the record suggests this failure is due to excusable neglect.

Lastly, this order considers the second and third *Eitel* factors together because examining the merits of a substantive claim and the sufficiency of a complaint share the same requirement, *i.e.*, stating a claim "on which the [plaintiff] may recover." *See Kloepping v. Fireman's Fund*, 1996 WL 75314 at *2 (N.D. Cal. 1996) (Judge Thelton E. Henderson) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). To establish liability for a CERCLA cost-recovery action, the Department must show:

> (1) the site in question is a "facility" as defined by CERCLA; (2) a "release" or "threatened release" of a hazardous substance has occurred; (3) "such release or 'threatened release' will require the expenditure of response costs that are 'consistent with the national contingency plan'"; and (4) the defendants fall within one of four categories of "covered persons" subject to liability.

*United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 756 (9th Cir. 2020). A government agency, such as DTSC, has a lower standard in establishing consistency with the national contingency plan (the "NCP"). Under Section 9607(a)(4)(A), a responsible party is liable to the state government for all response costs "not inconsistent" with the NCP. *Washington State Dep't of Transp. v. Washington Natural Gas* (*WSDOT*), 59 F.3d 793, 799–800 (9th Cir.1995). This order takes each element in turn.

*First*, the site where Hard Chrome conducted its business qualifies as a facility under CERCLA. The act defines a facility as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located," which our court of appeals has construed broadly. *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1360 n. 10 (9th Cir. 1990); 42 U.S.C. § 9601(9). Hard Chrome's site qualifies.

*Second*, a release of a hazardous substance occurred. As explained, Hard Chrome emitted into the air and deposited into the ground a variety of hazardous substances. The Department states that Hard Chrome generated approximately fifty pounds of hazardous substances per month (Amd. Compl. ¶ 15).

*Third*, the department has shown that the release required a response and that the remedial costs are not inconsistent with the NCP.  *See* 40 C.F.R. pt. 300.  "The NCP is designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment.  If that party follows the detailed process set forth in the NCP, then its costs are not inconsistent with the NCP."  *WSDOT*, 59 F.3d at 802.  Defendants carry the burden of proving the Department's actions were inconsistent with the NCP, and the Department has sufficiently stated it has acted pursuant to all applicable requirements.

*Fourth*, Hard Chrome qualifies as a covered person under CERCLA and is subject to liability.  Covered persons include owners and operators of "any facility at which such hazardous substances were disposed of," which encompasses businesses such as Hard Chrome.  *Sterling Centrecorp*, 977 F.3d at 756; 42 U.S.C. § 9607(a)(2).  The Department has sufficiently stated a claim under CERCLA under which it may recover, so *Eitel* factors two and three support default judgment for the Department's first cause of action.

*Eitel* factors two and three are also satisfied for the Department's second cause of action — declaratory relief that Hard Chrome is jointly and severally liable for any subsequent costs incurred in response to the release of the hazardous substances at the site.  CERCLA Section 113(g)(2) states, in relevant part:  "In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."  42 U.S.C. § 9613(g)(2).  Because the Department brought this action within the appropriate time, it has also sufficiently stated its second cause of action for declaratory judgment.

In sum, the *Eitel* factors support entry of default judgment.

### 3.   RELIEF REQUESTED.

Because default judgment is appropriate in these circumstances, this order now calculates the proper amount of damages for the first cause of action.  Strict liability attaches to the instant CERCLA violation.  Accordingly, the response cost of $2,459,409.00 is appropriate.

For the second cause of action, per CERCLA Section 113(g)(2), declaratory judgment is warranted that Hard Chrome is jointly and severally liable for further response costs or damages for any subsequent action or actions to recover for the site. This order cautions however, that this relief is explicitly subject to, and limited by, the consent decree signed by the other parties in this action, which specifically forecloses on the other parties' future liability for response costs (*See* Consent Order § 13, Dkt. No. 75-1). Nothing in this default judgment order should be considered to, in any way, affect the consent decree or the order granting the consent decree. This order warns the Department that any attempt to use this declaratory default judgment award to seek further remedies from parties in this action other than Hard Chrome Engineering, Inc. violates the explicit bounds of this order.

## CONCLUSION

To the extent explained above, the Department's default judgment motion is GRANTED. The Department is AWARDED $2,459,409.00. Hard Chrome SHALL be jointly and severally liable for further response costs or damages for any subsequent action or actions to recover for the site, subject to the explicit conditions of this order.

**IT IS SO ORDERED.**

Dated:  August 3, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California